## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES ALLEN BROOKS,

        Petitioner,

                          Civil Case Number: 4:14-CV-12528

v.                          Hon. Linda V. Parker

MARY BERGHUIS,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

James Allen Brooks, ("Petitioner"), confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney David B. Herskovic, petitioner challenges his conviction for first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(f); assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; domestic violence, M.C.L.A. 750.81a(2); resisting and obstructing a police officer, M.C.L.A. 750.81d(1); and interfering with a crime report, M.C.L.A. 750.483a(2)(b). For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

# I.  Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The charges involved an incident at the home defendant had shared with his wife, "VB."  VB had filed for divorce and defendant had just moved out.  The couple had a five-year-old daughter.  On the night in question, defendant came over to get a microwave at about 9:00 p.m.  VB testified that she was watching television and said "Hello" to defendant.  He responded by screaming, hitting her, and knocking over her chair.  Then he got on top of her and started choking her.  He shoved his fingers down her throat, struck her in the face, grabbed her hair, and hit head on the floor repeatedly.  She tried to get her cell phone, but defendant took it and started beating her with it.  He was also shoving the phone down her throat and she gagged.  Then she tried to get up and defendant picked her up and threw her into the entertainment center.  He continued to hit her and to bang her head on the ground.  She asked him to let her stand up because her head was spinning.  VB would stand up, and defendant would knock her down again.  This went on for "a really long time."
>
> At some point, VB testified, she apparently "blacked out," because the next thing she knew she "woke up" naked while defendant was raping her.  Defendant scratched her breast, and pinched and squeezed her nipples.  He said, "I am going to kill you ."  VB may have blacked out again, because the next thing she remembered was defendant running the water in the kitchen.  At this point, VB ran upstairs.  She had trouble seeing because her contact lens had fallen out from defendant hitting her in the face.  She closed herself in the bathroom and tried to call 911 on the land line.  Defendant came in the room, took the phone, and asked why she called 911.  She answered that she did not think the call went through.  Defendant took out the phone's batteries.  He then picked VB

up and threw her down on the bathroom floor.

VB tried to crawl away, but defendant grabbed her and pulled her back. At this point, the couple's daughter woke up and came down the hall crying. VB begged defendant to let her calm the child down. Defendant agreed, but repeated that he was going to kill VB. VB then went and laid down with the child, who continued to cry. Defendant came and laid on the other side of the child, and said, "You're not going to see daddy for a really long time, he did something really, really bad."

Police, who had been dispatched to the home, knocked at the door, and defendant went into a home office which contained a gun safe. Defendant said to VB, "I'm not going to jail for this, I'm going to kill you." VB went downstairs to unlock the door. Defendant came up behind her and slammed it shut. The police instructed defendant to open the door. VB ran back upstairs with her daughter. A few minutes later, she returned and saw defendant on the floor in handcuffs. At trial, photos were admitted showing her bruises and the home's disarray.

Huron Township police officers testified regarding the struggle with defendant. Arriving at the home, Officer Jason Otter saw VB, her face bloody. VB said, "Help me, please." Then defendant came and yanked her back inside the home and slammed and locked the door. Officer Otter kicked the door until the door jamb gave way, but defendant slammed the door shut again.

Next, Officer Hindley arrived and shoved his shoulder into the door. Ultimately, police were able to gain entry into the home. Officer Hindley and defendant began to wrestle and were "slamming into the walls." Defendant, who was training to be a martial arts fighter, had Officer Hindley in a headlock. Officer Otter had to spray defendant with pepper spray before he let Hindley go. Hindley also tasered defendant. During this time, VB was walking around "like a zombie." Officers recovered five long guns from the gun safe. Defendant's mother came and retrieved defendant's and VB's daughter.

VB was hospitalized for two days. She did not tell police or examining

3

physicians about the sexual assault. She first told her sister, who informed hospital personnel.

*People v. Brooks*, No. 305357, 2012 WL 5235798, at *1-2 (Mich. Ct. App. Oct. 23, 2012).

Petitioner's conviction was affirmed on appeal. *Id., lv. Den.* 493 Mich. 955 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. At trial, the Defendant was repeatedly denied the effective assistance of counsel guaranteed him by the federal and state constitutio[n] at trial, requiring the reversal of his convictions pursuant to U.S. Const. amends V, VI, XIV; Mich. Const. art. 1, §§ 17, 20.

II. The Defendant is entitled to reversal of his criminal sexual conduct conviction where a nurse was allowed to give damaging testimony beyond the scope of her expertise on rape trauma syndrome that bolstered the complainant's credibility and confirmed the complainant had been sexually assaulted in violation of the right to a fair trial and due process of law, U.S. Const. amends V, VI, XIV; Mich. Const. art. 1, § 17.

III. The Defendant was denied a fair trial by the admission of other bad acts evidence that was substantially more prejudicial than probative and did not comport with Mich. R. Evid. 403. U.S. Const. amends VI, XIV; Mich. Const. art. 1, § 17.

IV. The Defendant is entitled to resentencing where inaccurate scoring of Offense Variable 11 enhanced his sentence in violation of his state and federal right to effective assistance of counsel and due process of law, and the appellate court impermissibly determined that another mistake at sentencing negated the error. U.S. Const. amends VI, XIV; Mich. Const. art. 1, §§ 17, 20.

## II. Standard of Review

4

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at

410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision

6

is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)) (Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

7

**A.  Claim # 1.  The ineffective assistance of counsel claim.**

Petitioner first alleges that he was denied the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective

8

assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an

9

easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Petitioner first contends that trial counsel was ineffective for failing to call him as a witness.

The Michigan Court of Appeals rejected the claim:

Concerning the right to testify, defendant argues that his attorney's failure to call him as a witness amounted to a waiver of the defense of consent and deprived him of the right to present a defense in his own words. Specifically, defendant argues that he did not take the stand because his counsel told him it was not necessary, since a jury would not convict him of sexual assault. Also, defendant claims that his attorney did not discuss the consequences of not testifying on the defense of consent. According to defendant, VB had consented to sex with defendant on other occasions after filing for divorce, and defendant's mother testified that she "knew" the couple had sex because of the way VB's clothes were left on the floor.

We detect no ineffective assistance of counsel because the court questioned defendant at length regarding his decision and he unequivocally waived his right to testify. Defendant acknowledged that he knew he had the right to testify. He said he had discussed the plusses and minuses with his attorney, was satisfied with the attorney's counsel in this regard, and had voluntarily decided not to take the stand. Further, the defense of consent was not foreclosed by defendant's not testifying. Defendant's mother had presented this theory, and defense counsel argued that no sexual assault (and possibly no penetration) occurred that

10

night.  The defense of consent can be raised through cross-examination
of the complainant and other methods.

Additionally, defendant has failed to meet his burden to show that his
trial counsel's decision to not call him as a witness was not a decision
of trial strategy.  Faced with the strong evidence of brutality against VB,
defendant may have wished not to undergo cross-examination. Indeed,
at trial, defendant stated that the decision not to testify was his own after
discussions with his attorney.  Accordingly, we are not persuaded that
the decision not to testify was the product of ineffective assistance of
counsel.

*People v. Brooks*, No. 305357, 2012 WL 5235798, at \*5 (internal footnote omitted).

When a tactical decision is made by an attorney that a defendant should not

testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th

Cir. 2000).  A federal court sitting in habeas review of a state court conviction should

have "a strong presumption that trial counsel adhered to the requirements of

professional conduct and left the final decision about whether to testify with the

client." *Hodge v. Haeberlin*, 579 F. 3d 627, 639 (6th Cir. 2009)(internal citation

omitted).  To overcome this presumption, a habeas petitioner must present record

evidence that he or she somehow alerted the trial court to his or her desire to testify.

*Id.*  Petitioner on the record clearly indicated that he discussed the pros and cons of

taking the stand with his counsel and unequivocally waived his right to testify.

Because the record is void of any indication by petitioner that he disagreed with

counsel's advice that he should not testify, petitioner has not overcome the

11

presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F. 3d at 357.

Moreover, petitioner has failed to show that he was prejudiced by counsel's advice concerning whether he should testify or not. Petitioner has merely stated that he would have testified that the victim had consented to have sex with him, without providing any details of his proposed testimony, which is insufficient to establish prejudice based upon counsel's allegedly deficient advice concerning whether he should testify or not. *Hodge,* 579 F. 3d at 641 (defendant did not demonstrate prejudice required to establish claim of ineffective assistance of counsel based upon defense counsel's alleged impairment of his right to testify at capital murder trial where defendant did not provide details about substance of his testimony and merely speculated that his testimony would have had impact on jury's view of certain witnesses' credibility and of his involvement in murders).

More importantly, counsel was able to present a defense to the criminal sexual conduct charge without petitioner's testimony. Counsel obtained admissions from several witnesses, including the victim, that she had not initially reported the sexual assault to the police or to medical personnel. Counsel argued that the delay in reporting the sexual assault, coupled with the lack of serious injuries to the victim, indicated that no forcible sexual assault, and perhaps no sexual penetration at all, had

12

taken place that night. (Tr. 5/19/2011, pp. 63-80).

Counsel's decision to present a defense to the forcible sexual assault charge through the cross-examination of the prosecution witnesses and petitioner's mother, instead of calling petitioner to testify, was a reasonable trial strategy that defeats petitioner's claim.  Calling petitioner to testify would have subjected petitioner to impeachment and have forced him to admit that there had been sexual intercourse, albeit consensual, which would have defeated part of defense counsel's suggestion that there was no evidence that any sexual contact between petitioner and the victim had taken place.

An attorney's decision to present a defense through the cross-examination of prosecution witnesses and the examination of defense witnesses, rather than calling the defendant to testify, is a reasonable trial strategy, and not ineffective assistance of counsel, particularly where there are concerns about the defendant being impeached. *See Varney v. Booker*, 506 F. App'x 362, 365-67 (6th Cir. 2012) (trial counsel was not ineffective by failing to have defendant testify; even without defendant's testimony, two key pieces of evidence arguably supported defendant's self–defense theory, and counsel merely decided to rely on this evidence, rather than have defendant testify and possibly be impeached with such facts as his fleeing scene of shooting, his telling another witness that he shot victim in retaliation for victim

13

shooting three of defendant's associates, and his refusing to reveal location of his gun to police); *McCoy v. Jones*, 463 F. App'x 541, 548 (6th Cir. 2012) (counsel's conduct in discouraging defendant from testifying on his own behalf was reasonable trial strategy, and, thus, did not amount to ineffective assistance of counsel; defendant had demonstrated a significant temper during trial preparation that counsel feared would do significant damage to his self-defense claim if he testified, and counsel belief that self-defense could be presented through testimony of prosecution's own witnesses). Because counsel may have reasonably believed that he could contest whether a forcible sexual assault had taken place through other evidence without calling petitioner to the stand, to avoid petitioner being subjected to impeachment, the Michigan Court of Appeals reasonably concluded that counsel was not ineffective for failing to call petitioner to testify.

Petitioner next argues that counsel was ineffective for conceding petitioner's guilt to the misdemeanor offense of domestic violence.

An attorney may not admit his client's guilt contrary to the client's earlier entered not guilty plea, unless the defendant unequivocally agrees to and understands the consequences of his admission. *Wesley v. Sowders*, 647 F. 2d 642, 649 (6th Cir. 1981). In *Wesley v. Sowders*, the Sixth Circuit found defense counsel to be ineffective because both defense attorneys repeatedly stated in closing argument that

14

the defendant was "guilty," "guilty as charged," and "guilty beyond a reasonable doubt." The Sixth Circuit found that counsel's arguments represented the "precise admission" that defendant had rejected in his earlier not guilty plea. *Wesley,* 647 F. 2d at 649-50. In finding the petitioner's counsel to be ineffective, the Sixth Circuit noted that counsel's "complete concession" of his client's guilt was a nullification of the adversarial quality of the fundamental issue of guilt or innocence. *Id.*

This case is distinguishable from the one in *Wesley,* because petitioner's counsel did not concede that petitioner was guilty of the charged offenses of first-degree criminal sexual conduct, assault with intent to do great bodily harm, resisting a police officer, or interfering with a crime report, but was guilty, at most, of the misdemeanor offense of domestic violence.

A defense counsel's concession that his client is guilty of a lesser included offense is a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing so as to amount to the denial of counsel. *See Goodwin v. Johnson,* 632 F. 3d 301, 310 (6th Cir. 2011); *Valenzuela v. United States,* 217 F. App'x 486, 488-90 (6th Cir. 2007); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004). In this case, to the extent that counsel conceded that petitioner was guilty of the misdemeanor assault, it was part of a strategy to obtain an acquittal on the more

serious felony charges.  Petitioner has failed to show that counsel was ineffective.

Petitioner is not entitled to relief on his first claim.

### B.  Claims # 2 and # 3.  The evidentiary law claims.

The Court consolidates petitioner's second and third claims because they both

involve evidentiary law issues.  In his second claim, petitioner claims that the trial

court erred by permitting Kristine McGregor, R.N., a sexual assault forensic

examiner, to testify regarding rape trauma syndrome or RTS, because this went

beyond the scope of her expertise on sexual assault exams and trauma nursing.  In his

third claim, petitioner contends that the trial court erred in permitting the prosecutor

to introduce evidence of petitioner's prior threats and acts of violence against the

victim. [1]

---

[1]  Respondent contends that petitioner's second claim is procedurally defaulted and his third claim is unexhausted because he failed to raise the claim before the Michigan Supreme Court.  This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  In addition, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  Likewise,  a habeas petitioner's failure to exhaust his state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  A habeas petitioner's failure to exhaust his state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002). Because petitioner's second and third claims are non-cognizable, it is easier for the

Federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001).  Thus, a federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on a particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008).  In light of the deferential standard afforded to state courts under the AEDPA, the trial court's decision to permit Kristine McGregor to offer opinion evidence concerning rape trauma syndrome and the victim's behavior and demeanor was not contrary to clearly established federal law, so as to entitle petitioner to habeas relief. *See e.g. Schoenberger v. Russell,* 290 F. 3d 831, 835 (6th Cir. 2002).  Petitioner is not entitled to habeas relief on his second claim.

Petitioner's third claim that he was denied a fair trial by the admission of

---

Court to address the claims on the merits.

irrelevant and highly prejudicial evidence involving prior assaults and threats against the victim cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

To the extent that petitioner argues that the state court violated M.R.E. 404(b) by admitting improper character evidence against him, he would not be entitled to relief because this claim is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,*

18

329 F. 3d 496, 512 (6th Cir. 2003).  Petitioner is not entitled to habeas relief on his

third claim.

### C.  Claim # 4.  The sentencing guidelines/ineffective assistance of counsel claim.

Petitioner lastly contends that he is entitled to re-sentencing because of the

inaccurate scoring of twenty five points under Offense Variable (OV) 11 of the

Michigan Sentencing Guidelines, as well as the Michigan Court of Appeals' *sua

sponte* determination that there was no need for a re-sentencing, because even though

OV 11 had been improperly scored, OV 5 had been improperly scored in petitioner's

favor and that a correct scoring of OV 5 for psychological harm to petitioner's

daughter would leave the sentencing guidelines range the same even if OV 11 were

scored at zero points.  Petitioner also contends that counsel was ineffective for failing

to object to the scoring of OV 11.

State courts are the final arbiters of state law. *See Bradshaw v. Richey,* 546

U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002).  Therefore,

claims which arise out of a state trial court's sentencing decision are not normally

cognizable on federal habeas review, unless the habeas petitioner can show that the

sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See

Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002).  Thus, a sentence

19

imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

Petitioner is not entitled to relief on his related claim that the Michigan Court of Appeals erred in re-scoring OV 5 for psychological injury on appeal without a remand to the trial court, on the ground that this violated his Sixth Amendment right to confrontation, in that petitioner did not have an opportunity to cross-examine the victim or her daughter about whether the daughter had sufferered psychological

20

injury.

Petitioner is not entitled to habeas relief on this portion of his claim. The Supreme Court has referred to a defendant's Confrontation Clause right as being a "trial right." *See Pennsylvania v. Ritchie,* 480 U.S. 39, 52 (1987) ("The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.") (emphasis original); *See also Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right.").

The Sixth Amendment right to confrontation does not apply at sentencing. *U.S. v. Graham-Wright*, 715 F. 3d 598, 601 (6th Cir. 2013)(citing *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006); *United States v. Hamad*, 495 F.3d 241, 246–47 (6th Cir. 2007)). Given the lack of holdings by the Supreme Court on the issue of whether a state court is required to conduct an evidentiary hearing when a criminal defendant contests the scoring of the sentencing guidelines, the rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

Petitioner further claims that trial counsel was ineffective for failing to object to OV 11.

21

A right to the effective assistance of counsel exists during sentencing in both noncapital and capital cases. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler*, 132 S. Ct. at 1386 (*quoting Glover v. United States*, 531 U.S. 198, 203 (2001)).

The Michigan Court of Appeals rejected petitioner's claim, on the ground that the sentencing would have been the same even with a proper score on OV 11. *People v. Brooks*, No. 305357, 2012 WL 5235798, at *6.

In light of the fact that petitioner's sentencing guidelines range would not have changed even if Offense Variable 11 had been properly scored, petitioner was not prejudiced by counsel's failure to object to the allegedly incorrect scoring of OV 11 under the sentencing guidelines. *See U.S. v. Pomales*, 268 F. App'x 419, 423-24 (6th Cir. 2008). Petitoner is not entitled to relief on his fourth claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a

22

constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

23

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED.**

S/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 29, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 29, 2016, by electronic and/or U.S. First Class mail.

S/ Kelly Winslow for Richard Loury
Case Manager

24